UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SKY-STEVEN THOMAS MILLER,

          Plaintiff,

v.

PERRY B. BARTRAM, *et al*,

          Defendants.

Case No. C09-5094FDB-KLS

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND MOTION FOR CONTINUANCE; ISSUING AMENDED PRETRIAL SCHEDULE ORDER

This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1), Local Rules MJR 3 and 4, and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72. This case is before the Court on plaintiff's filing of a motion to compel discovery (Dkt. #24-#25) and motion for continuance (Dkt. #31). After reviewing plaintiff's motions, defendants' responses thereto (Dkt. #26 and #28), plaintiff's replies to defendants' responses (Dkt. #29-#30), and the balance of the record, the Court finds and orders as follows:

"On notice to other parties and all affected persons, a party may move for an order compelling . . . discovery," including an order to compel production, or if "a party fails to respond . . . as requested under" Fed. R. Civ. P. 34. Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P.

ORDER
Page - 1

37(a)(1). "If the motion is granted -- or if the . . . requested discovery is provided after the motion was filed -- the court must, after giving opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except if:

> **(i)** the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action;
>
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> **(iii)** other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). In addition, the Court may "apportion the reasonable expenses" incurred, in the event the motion "is granted in part and denied in part." Fed. R. Civ. P. 37(a)(5)(C).

Plaintiff filed and served his motion to compel discovery – specifically, responses to two requests for production of documents made pursuant to Fed. R. Civ. P. 34 – on August 3, 2009. (Dkt. #24). He states he served his first such request on defendants pursuant to Fed. R. Civ. P. 34 on June 8, 2009, but claims defendants responded late to that request. (Dkt. #24; see also Dkt. #25, Exhibit 1). The record, though, shows otherwise. "The party to whom the request [for production] is directed must respond in writing within 30 days after being served" with that request. Fed. R. Civ. P. 34(b)(2)(A). The responses defendants served on plaintiff are dated July 13, 2009. (Dkt. #25, Exhibit 3.A).

Although technically dated more than 30 days after the date of plaintiff's first production request was made, "[w]hen a party . . . must act within a specified time after service and service is made" by mail, "3 days are added after the period would otherwise expire." Fed. R. Civ. P. 5(b)(2)(C), 6(d). In addition, "[w]hen the last day" of the period in which the party required to act must do so falls on a Saturday or Sunday, "the period runs until the end of the next day that is not" a Saturday or Sunday. Fed. R. Civ. P. 6(a)(3). In this case, the last day on which defendants' responses to plaintiff's first request for production were due, taking into account the extra 3 days noted above – given that plaintiff served his request through the United States mail – was July 11, 2009. See (Dkt. #25, Exhibit 1). July 11, however, was a Saturday, and the next day after that, which was not a Saturday or Sunday, was Monday, July 13, 2009, the very day on which defendants responses apparently were served on plaintiff.

Defendants' responses to plaintiff's first production request, therefore, were not late. With respect to the second request for production, plaintiff states he served it on defendants on June 15, 2009,

although, unlike in regard to his first such request, he has provided no certificate of service – or indeed any page that has a signature and a date – to the Court. See (Dkt. #24-2, Dkt. #25, Exhibit 2). Defendants responses to plaintiff's second request are dated July 23, 2009, which, if the date plaintiff gave for serving that request is correct, would mean those responses were eight days late. (Dkt. #25, Exhibit 3.B). As defendants have not challenged plaintiff's stated date of service here, the undersigned accepts that date. Nevertheless, for the reasons set forth below, the undersigned finds an award of expenses to plaintiff on the basis of any late service of defendants' responses thereto to be unjustified.

As noted above, the party who files a motion to compel discovery must include a certification that he or she has in good faith conferred or attempted to confer with the party failing to make discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1). While plaintiff's motion to compel does not actually contain such a certification, plaintiff states therein that on July 17, 2009, he wrote to counsel for defendants to resolve "disputed discovery requests." (Dkt. #25, Exhibit 4). That letter, though, hardly constitutes a good faith attempt to confer. For example, plaintiff merely requests defendants provide him with copies of "RFPs" (presumably meaning "requests for production") numbers 1 through 20 "consistent with" Fed. R. Civ. P. "26 and 34." (Id.). The only other comment he makes therein is that it appeared that spoliation "maybe [sic] involved." (Id.). Plaintiff than informs defendants' counsel to contact him "within 10 calendar days to resolve this matter." (Id.).

In essence, however, this letter for the most part largely constitutes a reassertion of plaintiff's first requests for production, and a much more vague one at that. In addition, the letter is dated some six days prior to the date defendants served – albeit late as discussed above – their responses to plaintiff's second request for production. Nor does that letter, not surprisingly, discuss any discovery issues plaintiff had in regard to his second request. Plaintiff further states, though, that he attempted to call defendants' counsel on July 29, 2009, and again on July 31, 2009, but "was told by [sic] phone operator that [sic] phone was blocked at the request of the defendants [sic] counsel from taking calls from" him. (Dkt. #24-2, p. 2, Dkt. #29, p. 1). Accordingly, plaintiff decided to file his motion to compel three days later on August 3, 2009. (Dkt. #24-2, p. 2). There is no indication, however, that plaintiff then made any further attempt to contact defendants' counsel in writing, making known his intent to file such a motion, let alone specifically what issues he had in regard to the responses he received to his production requests.

The undersigned thus finds plaintiff did not make a good faith effort to attempt to obtain discovery

without court action. It appears, furthermore, that defendants did, and continue to, make good faith efforts to resolve the discovery disputes currently before the Court. Defendants point out, for example, that their counsel "conversed by telephone" with plaintiff on August 12, 2009, "regarding his motion to compel," as a result of which "[s]ome issues were resolved." (Dkt. #26, p. 1). In their response to plaintiff's motion to compel, defendants further state that another teleconference was held between the parties after the filing on August 19, 2009, of plaintiff's amended affidavit in support of his motion to compel. (Dkt. #29, Dkt. #28, p. 1). As defendants relate in that response, many of the discovery issues plaintiff raises already have been resolved. As discussed in greater detail below, furthermore, defendants have agreed to provide other requested documents, which resolve many more of those issues. These, and the other remaining discovery issues, shall be addressed specifically below.

I. <u>Plaintiff's First Request for Production of Documents</u>

    A. <u>Request #1 (Medical File)</u>

Plaintiff requested a complete copy of his medical file for the period of September 2005, though June 2009. (Dkt. #25, Exhibit 1, p. 1). Defendants responded to this request by stating that this file was "available for inspection and copying at plaintiff's request and expense at the medical unit [of] plaintiff's institution." (<u>Id.</u>, Exhibit 3.A, p. 2). Plaintiff challenges the validity of this response, pointing out that he has been granted *in forma pauperis* status, stating that he is indigent and that paying for copies is too much of a burden for him, and claiming that defendants are aware of this and are using it as a "ploy to block" his "access to the documents requested." (Dkt. #25, p. 1).

The mere fact that plaintiff has been granted *in forma pauperis* status – which merely allowed him to proceed with this matter without <u>first</u> paying the required filing fee – and also is indigent, though, does not entitle him to have his discovery costs borne by defendants. Nor is there any evidence, other than plaintiff's own unsupported assertion, that defendants are using his financial circumstances as a "ploy" to prevent him from obtaining the desired discovery. In any event, defendants now state that because "it would be difficult or not possible for plaintiff to obtain his own copies of some of the documents" he had requested, "even after inspection," they will provide him with a copy of his medical file. (Dkt. #28, p. 1). Accordingly, as this discovery issue has been resolved by the parties, no Court ruling is needed.

    B. <u>Request #2 (Central File)</u>

Plaintiff requested a complete copy of his central file, also for the period of September 2005,

1 through June 2009. (Dkt. #25, Exhibit 1, p. 1). Defendants responded to this request by stating that
2 "[c]ertain portions of this file may be protected and privileged and confidential pursuant to legitimate
3 penological purposes," and that "[w]ithout waiving this objection, this file is available for inspection and
4 copying at plaintiff's request and expense at plaintiff's institution." (Id., Exhibit 3.A, p. 2). Plaintiff states
5 defendants' response indicates that they "are playing games" in the hope of withholding "all information"
6 he had requested. (Dkt. #25, p. 2).

7 This last claim lacks merit, as defendants expressly stated that plaintiff could inspect and copy his
8 central file himself. In addition, plaintiff states that he has had the opportunity to, and did, access that
9 file, and that defendants have agreed to provide him the first 50 pages of his central file at no cost. (Id., p.
10 2). The fact that "none of the files" he asked for were in his central file, is by no means indicative of an
11 intent or attempt to prevent him from obtaining discovery. It only means that the documents he thought
12 may or should have been there, were not there after all. (Id.). Plaintiff has made no showing that he has
13 been disallowed access to anything being kept in his central file. As such, his motion to compel
14 concerning this second request hereby is DENIED.

15      C.     <u>Request #3 through #8 (Administrative Policies)</u>

16 In his third through eighth production requests, plaintiff asked for copies of various Department of
17 Corrections ("DOC") policies. (Dkt. #25, Exhibit 1, p. 1). In regard to each of these requests, defendants
18 responded that the requested document was "available for inspection and copying at plaintiff's request
19 and expense at plaintiff's institution." (Id., Exhibit 3.A, pp. 2-3). Plaintiff asserts that while he can view
20 these documents at his institution, he lacks the physical means to copy them, and alleges that defendants
21 are just using this in an attempt "to use up discovery time to block" his case. (Dkt. #25, pp. 2-3). There is
22 nothing in the record, however, to indicate defendants did not believe at the time they provided their
23 responses that plaintiff had reasonable access to the requested documents. In addition, at the August 12,
24 2009 discovery teleconference, defendants agreed to provide copies thereof. (Dkt. #29, p. 2). Therefore,
25 as this discovery issue has been resolved by the parties, no Court ruling is needed

26      D.     <u>Request #9 (Grievances About Medical Concerns)</u>

27 Here, plaintiff requested copies of all grievances "about medical concerns" he filed between
28 January 2008, and June 2009, "and there [sic] responses." (Dkt. #25, Exhibit 1, p. 1). In regard to this
request, defendants both referred to the response they gave to Request #2 discussed above, and further

stated that "[t]his information should be contained in plaintiff's central file." (Dkt. 25, Exhibit 3.A, p. 4). Again, plaintiff asserts without any support therefor that defendants "are playing games with" him at his "expense to run out discovery time." (Dkt. #25, p. 3). However, for the same reasons discussed above that the Court found defendants' response to Request #2 to be proper, so too is their response to this request proper. Defendants, in addition, now have agreed to provide plaintiff with a copy of his grievance file. Thus, as this discovery issue has been resolved by the parties, no Court ruling is needed.

E. Request #10 (Misconduct Reports on Medical Concerns)

In this request, plaintiff asked for copies of "all official misconduct reports" he filed "on medical concerns and there [sic] responses." (Dkt. #25, Exhibit 1). Defendants gave the same response that they provided with respect to Request #9. (Id., Exhibit 3.A, p. 4). Plaintiff makes the same claims as well in regard to this response that he did with respect to defendants' response to Request #9 (Dkt. #25, p. 3), and thus the Court makes the same finding concerning defendants' response here. Further, defendants state in their response to the motion to compel that plaintiff indicated he no longer requires the requested reports, and plaintiff has not disputed this statement. Accordingly, as this discovery request no longer appears to be an issue, no Court ruling is needed.

F. Requests #11 (Medical Kites) and #12 (Medical Department Memos/E-mails)

In Request #11, plaintiff asked for a "[c]opy of all medical kites" he filed between the period of January 2008, and June 2009, and in Request #12, he asked for a "[c]opy of all memos and or E-mails written by medical Dept. concerning" him during the same period. (Dkt. #25, Exhibit 1, pp. 1-2). Again, the same response and claims defendants gave and plaintiff has made with respect to Requests #10, were given and made in regard to Requests #11 and #12 as well. (Dkt. #25, pp. 3-4; Dkt. #25, Exhibit 3.A, p. 4). The Court also for the reasons discussed above, once more too makes the same finding concerning defendants' responses thereto.

As noted above, however, plaintiff has stated that none of the documents he requested are in his central file. It may be that the documents he seeks in Requests #11 and #12 are contained in his medical file as they all appear to concern medical matters. However, to the extent they are not – and to the extent that they actually exist and are in DOC's possession – defendants shall provide those requested documents within **thirty (30) days** of the date of this order. To this extent, therefore, plaintiff's motion to compel regarding Requests #11 and #12 hereby is GRANTED, though no expenses as a result thereof are

awarded in connection therewith.

G. <u>Request #13 (Video from Dayroom Camera)</u>

Plaintiff requested a copy of a video "from lower C-unit dayroom camera on 10-17-08 between the times of 7:45 am. and 8:30 am." (Dkt. #25, Exhibit 1, p. 2). Defendants responded to this request as follows:

> Objection: Vague; not reasonably calculated to lead to the discovery of admissible evidence; penological purpose privilege. Without waiving this objection, it is not believed that any such video exists. However, defendants are attempting to determine whether a video exists and to the extent one is located and is discoverable, it can be made available for viewing at plaintiff's request or copying at plaintiff's expense.

(<u>Id.</u>, Exhibit 3.A, p. 5). In his motion to compel, plaintiff makes the following assertions:

> . . . This is not vague. It is very much to the point and specific. It is not up to the defendants to determine what they think is admissable [sic]. Defendants are trying to block this vidio [sic] do [sic] it shows the accident they caused and are responsible for. Defendants allso [sic] had more then [sic] 30 days to investigate this request and did not do so. Defendants claim they don't know if vidio [sic] even exists. This shows defendants are not taking discovery seriously or even care to.

(Dkt. #25, p. 4). In their response to the motion to compel, however, defendants state plaintiff has been informed that this video does not exist. (Dkt. #28, p. 2). Since plaintiff has provided no evidence that one does exist, defendants are not required to produce it.

Defendants' response to plaintiff's request here, furthermore, was not improper. The Court agrees that the request was vague, as plaintiff does not allege in his complaint that the accident occurred in the C-unit dayroom or at a particular period of time. Defendants also correctly point out that discovery need not be produced, if it is not reasonably calculated to <u>lead</u> to the discovery of admissible evidence. Thus, there is no indication that when plaintiff made his request, any relevant connection existed between the video tape – which as just noted apparently does not exist – and the subject matter of this action. In addition, despite such vagueness and lack of relevance, defendants still made efforts to determine its existence, and agreed to make it available to plaintiff for viewing if and when it was found. Accordingly, the Court does not find, as plaintiff asserts, that defendants are not taking discovery in this matter seriously. The motion to compel discovery regarding this request thus is DENIED as well.

H. <u>Request #14 (Public Disclosure Requests)</u>

Plaintiff requested a "[c]opy of all public disclosure requests" he "made between Jan.2008 through Jun.2009 and there [sic] responses." (Dkt. #25, Exhibit 1, p. 2). Defendants responded by objecting to the

request as being "vague and ambiguous" and "overly burdensome," asserting that it did "not identify to which agencies plaintiff made public records requests," and stating that if plaintiff identified "which specific agencies, copies of these files" could "be provided at plaintiff's expense." (Id., Exhibit 3.A, p. 5). Plaintiff argues defendants are "playing word games" here, and claims "[i]t is obvious" he "is asking for all requests made to DOC public records office to obtain records on this case." (Dkt. #25, p. 4).

It is not at all obvious from the plain wording of plaintiff's request, that he only was seeking such requests from DOC concerning this case. Indeed, it appears to request all public disclosure requests he has made over a one and a half year period, without any limitation as to which agencies those requests in fact were made. Defendants' response, therefore, was entirely appropriate. To the extent plaintiff merely is seeking only those public disclosure requests he made to, and the responses he received from, the DOC pertaining to this cause of action or to the subject matter thereof, the Court finds that request to be more reasonable. Although it may be, as defendants assert, that this request is merely an attempt on plaintiff's part to obtain any such documents free of charge, defendants have not shown that going through official public disclosure channels is "more convenient, less burdensome, or less expensive," or that "the burden or expense of" the request "outweighs its likely benefit." Fed. R. Civ. P. (C).

To this extent, therefore, the motion to compel regarding Request #14 hereby is GRANTED. As such, defendants shall produce any public disclosure requests plaintiff made during the above time period to the DOC public records office, and any responses made thereby with respect thereto, within **thirty (30) days** of the date of this order, unless they can show they should not be required to do so under Fed. R. Civ. P. (C). Again, though, defendants are not required to pay any expenses as a result of this partial grant of plaintiff's motion to compel.

I. Request #15 (Safety Officer's Report)

Plaintiff requested a "[c]opy of McNeil Island Safety Officer Marry Lamb's report on" his "fall dated 10/17/08 and any follow up reports as well as who received" that report. (Dkt. #25, Exhibit 1, p. 2). In response, defendants stated "[t]o the extent that any report exists, it should be in plaintiff's central file." (Id., Exhibit 3.A, p. 5). Defendants also indicated "[c]ertain portions" of the request might be protected, privileged and confidential. (Id. at pp. 2, 5). Plaintiff argues defendants' statement regarding where the requested report "should" be, shows they "never took the time to even research" his request, which again "shows a pattern of" continued "uncooperativeness" on their part. (Dkt. #25, p. 4).

1    Plaintiff, however, subsequently has stated that he informed defendants that he no longer needs the
2    above report, as he has received it elsewhere. (Dkt. #29, p. 2).  Further, while the Court agrees
3    defendants' response does indicate they could have done more to investigate the existence of this report
4    by, say, at the very least, checking to see if it was in plaintiff's central file, no "pattern of . . .
5    uncooperativeness" is seen in that response.  Accordingly, as plaintiff no longer seeks production of the
6    report, no Court ruling is needed.

       J.        Request #16 (List of Date and Times for Dr. Brewer)

In this request, plaintiff asked for a "list of dates and times that Dr. Brewer came to McNeil Island to see Inmates between 3/2008 through 6/2009." (Dkt. #25, Exhibit 1, p. 2).  In their response, defendants stated "[i]t is not believed that any 'list' exists." (Id., Exhibit 3.A, p. 5).  In his motion to compel, plaintiff states as follows:

> . . . It is mandantory [sic] that all all [sic] visitors sign in prior to being admitted to a correction facility.  [D]efendants also get billed every time Dr. Brewer comes to McNeil Island.  At the very least they can not [sic] expect anyone to believe that they don't know when an outside contractor is on the property or not for both secuuity [sic] reasons as well as billing reasons.

(Dkt. #25, p. 5).  The fact that a visitor must sign in when entering a prison facility, however, does not in any way necessarily mean a list of visit dates and times for that particular visitor has been created and/or kept.  Further, that plaintiff may not believe defendants do not know when a contractor is present alone is not sufficient to establish the existence of any such list.

That being said, it is not at all clear that defendants attempted to determine or investigate as to whether the list plaintiff requests here in fact does exist.  Accordingly, plaintiff's motion to compel with respect to this request hereby is GRANTED to the extent such a list does exist.  In that case, i.e., should it be determined that such a list does exist, defendants shall produce a copy thereof within **thirty (30) days** of the date of this order.

       K.        Request #17 (Bill for Shoes and Orthotics)

Plaintiff requested a "[c]opy of [sic] bill for shoe's [sic] and orthotics that [sic] outside contractor delivered to" him on April 23, 2009. (Dkt. #25, Exhibit 1, p. 2).  Defendants responded to this request by indicating that "[c]ertain portions" of the request might be protected, privileged and confidential, and by stating that "[t]his information should be contained in plaintiff's central file." (Id. at pp. 2, 6).  Plaintiff asserts that "[i]t is very doutful [sic] that this bill would be in" his "central file," in that he "has never seen

any outside contracted medical providers bills in this file," and that this leads him to believe defendants "never even bothered to look into this request." (Dkt. #25, p. 5).

It is not clear whether such a bill should or should not be in plaintiff's central file. Again, though, it also is not clear, given defendants' above response, that any attempt to determine or investigate as to whether the requested bill is in plaintiff's central file was made. In addition, as noted above, plaintiff has stated that he has had the opportunity to, and did indeed, review his central file, which contained none of the documents he has requested here. To the extent that the above bill is contained in plaintiff's medical file, defendants, also as noted above, have stated they will provide a copy thereof. Should the requested bill be in that file, defendants, of course, need not produce another copy of it.

Otherwise, plaintiff's motion to compel concerning this request hereby is GRANTED, but only to the extent that the requested bill exists elsewhere in DOC's possession other than in plaintiff's central and medical file. Accordingly, to the extent that the requested bill is not contained in plaintiff's medical file, defendants shall investigate the existence – and, if found, produce a copy – thereof within **thirty (30) days** of the date of this order. The Court, though, finds defendants' response was not so deficient here so as to require them to pay discovery-related expenses.

L. Request #18 (Officer Taylor's Report)

In this request, plaintiff asked for a [c]opy of Officer Taylors [sic] report on" his "fall on 10/17/08 down lower C-unit stairs." (Dkt. #25, Exhibit 1, p. 2). Defendants responded to this request the same way they responded to Request #17. (Id., Exhibit 3.A, p. 6). Plaintiff asserts "[t]his information should be contained in" his "central file." (Dkt. #25, p. 5). Again, however, plaintiff himself has admitted that he has been able to review his file, and in fact has done so, and that none of the documents he requested are contained therein. Thus, as with Request #17, plaintiff's motion to compel as to this request hereby is GRANTED, but only to the extent that Officer Taylor's report exists elsewhere in DOC's possession, in which case, defendants shall produce that report within **thirty (30) days** of the date of this order. Also, here too, the Court finds payment of expenses by defendants is not warranted.

M. Request #19 (Records from McNeil Island Fire Department)

Plaintiff requested a "[c]opy of all records from McNeil Island Fire Dept. regarding" his "fall on 10/17/2008." (Dkt. #25, Exhibit 1, p. 2). Once more, defendants responded the same way as they did in regard to Request #17. (Id., Exhibit 3.A, p. 6). Plaintiff states in his motion to compel that he has since

1  obtained these records "from another source," and thus no long needs them from defendants. (Dkt. #25, p.
2  6). Accordingly, as plaintiff no longer seeks those records, no Court ruling is needed, except to the extent
3  that no expenses shall be awarded here.

    N.  Request #20 (St. Joseph Hospital Medical Reports)

Plaintiff requested a "[c]opy of all medical reports from" his "visit to St. Joseph Hospital in Tacoma on 10/17/2008." (Id., Exhibit 1, p. 2). Defendants responded by stating "to the extent that this information is not in plaintiff's medical file," they "cannot provide it," and that "[a]ny information in defendants' possession is in plaintiff's medical file," which "is available for inspection and copying at plaintiff's request and expense at the medical unit" of his institution. (Id., Exhibit 3.A, p. 6). Plaintiff, in his motion to compel, again states that he has since obtained these reports "from another source," and thus no longer needs them from defendants. (Dkt. #25, p. 5). Indeed, as noted above, defendants have agreed to provide plaintiff a copy of his medical file as well. Accordingly, nothing remains before the Court that requires resolution concerning this discovery issue.

II. Plaintiff's Second Request for Production

    A.  Request #1 (Medical Shoes Grievances)

Plaintiff requested a "[c]opy of all Grievances filed about medical shoe's [sic] from Jan.2007 through Jun.2009." (Id., Exhibit 2). In their response, defendants stated that "[t]his should be contained in plaintiff's central file," and that it "is available for inspection and copying at" his "request and expense at" his institution. (Id., Exhibit 3.B, p. 2). As discussed above, plaintiff has had the opportunity to review his central file, and has done so. In addition, also as discussed above, defendants now have agreed to provide plaintiff with a copy of his grievance file. For these reasons, as there does not appear to be any discovery issues remaining regarding this request, no Court ruling is needed.

    B.  Request #2 (Hospital and Ambulance Bills)

Plaintiff requested a copy of his "hospital bill on 10/17/08 as well as Ambulance bill, and the two escourt [sic] officers wages for the day," along with "any seperate [sic] billing related to this trip like radiology, and medications given at [sic] hospital." (Id., Exhibit 2). Defendants responded by stating that the request was "not reasonably calculated to lead to the discovery of admissible evidence," and that "any medical information in possession of DOC is contained in plaintiff's medical file and is available for" his inspection and copying at his "request and expense." (Id., Exhibit 3.B, p. 2). Plaintiff states the requested

information "will lead to showing direct" negligence on defendants' part. (Dkt. #25, p. 6). Plaintiff states as well that he has seen his medical file, and that he did not see the requested information. (Id.).

It is not at all clear that the information plaintiff requests here is not reasonably calculated to lead to admissible evidence. Given that plaintiff alleges he suffered an accident on October 17, 2008, and that he was taken to a hospital as a result thereof, it certainly is possible that any billing information resulting directly from the treatment plaintiff received that day could contain evidence relevant to the harm suffered and actions of defendants. On the other hand, the Court sees little relevance in information concerning the wages of the escort officers for the day in question, as it is not likely to lead to the discovery of admissible evidence in this matter.

Accordingly, to the extent the hospital, ambulance and other medical billing information requested by plaintiff here and relating to the treatment he received for his fall on October 17, 2008, is not contained in his medical file – a copy of which, as noted above, defendants have agreed to provide – and exists and is in DOC's possession, defendants shall produce a copy thereof within **thirty (30) days** of the date of this order. To that extent then, plaintiff's motion to compel with respect to this request for production hereby is GRANTED. Once more, though, nothing in defendants' response to this production request indicates an award of expenses is justified here.

C. Request #3 (Lawsuits Filed on Defendant Bartram)

In this request, plaintiff asked for a "[c]opy of any and all lawsuits filed on Perry B. Bartram, Jr. for any type of medical neglagence [sic] while employed by" DOC. (Dkt. #25, Exhibit 2). Defendants responded to this request by objecting that it was "not reasonably calculated to lead to the discovery of admissible evidence." (Id., Exhibit 3.B, p. 2). In his motion to compel, plaintiff asserts "[t]his information will show a pattern that defendant's [sic] don't want anyone to see . . . of . . . negligence and incompitence [sic] in a [sic] on going fashion that the State refuses to do anything about." (Dkt. #25, p. 6).

The Court, however, agrees with defendants that there is no indication that any such information concerning defendant Bartram and other lawsuits, has any bearing on the particular facts and issues in this matter. Accordingly, the Court finds defendants properly objected to plaintiff's request, and do not have to produce the requested information. Plaintiff's motion to compel regarding this discovery request thus hereby is DENIED.

1    D.     Request #4 (DOC Lawsuits on Medical Concerns)

Plaintiff requested a "[c]opy of any and all lawsuits filed on" DOC "about medical concerns at the McNeil Island Corrections Center in the last ten years, starting 1999 of Jan." (Dkt. #25, Exhibit 2). Again in response to this request, defendants objected on the basis that it was "not reasonably calculated to lead to the discovery of admissible evidence." (Id., Exhibit 3.B, p. 2). Defendants also object that the request is "overly broad and burdensome." (Id.). Plaintiff gives the same argument as to why such information is relevant that he did in regard to Request #3.

For the same reasons, however, the Court once more agrees with defendants that plaintiff has not shown the requested information has any bearing on the particular facts and issues in this matter, and in fact is less so here, given that this request does not even concern any of the named defendants. In light of the large number of lawsuits filed – many of them likely also involving medical concerns or other related issues – against the DOC in any given year, furthermore, the Court agrees as well that this request is both overly broad and unduly burdensome. Accordingly, plaintiff's motion to compel as to this request hereby too is DENIED.

E.     Request #5 (ADA Facilitator's Report)

In this request, plaintiff asked for a "[c]opy of ADA Facilitator CUS Bailey's report on" his "letter dated 12/28/2008," about plaintiff's "ADA concerns," and to whom "that report went." (Id., Exhibit 2). In response, defendants stated that they had "not yet located this report, if it exists," and that "[t]his response will be supplemented if any such report is found." (Id., Exhibit 3.B, p. 3). Plaintiff argues the amount of time defendants are taking to find the requested information, shows they are not taking "this request or for that matter this whole action seriously." (Dkt. #25, p. 7). The Court disagrees.

Rather, defendants' response indicates they were actively looking for the requested information to the extent that it existed – further indicating that they were not aware at the time whether or not it actually did exist – and that they would inform plaintiff should it be found. Such a response hardly is indicative of an intent on defendants' part to not take discovery or this matter in general seriously, but rather shows the opposite. Indeed, defendants now state that the requested report does not exist. Accordingly, the motion to compel regarding this last production request hereby is DENIED as well.

III.   Plaintiff's Motion for Continuance

As noted above, plaintiff also has filed a motion for continuance, requesting an additional sixty

(60) days in which to conduct discovery, "due to the continued refusal of defendants to produce" the documents he requested. (Dkt. #31). As discussed above, though, defendants' responses to plaintiff's requests for production do not evince a refusal on their part to participate properly in discovery, but rather demonstrate a largely honest effort to comply with those requests, while at the same time still preserving their right to object to improperly made requests. However, given that, as discussed above, defendants have been given thirty (30) days from the date of this order to supplement their prior discovery responses, and that the discovery deadline currently is set for November 10, 2009, the Court shall allow an additional thirty (30) days in which discovery may be pursued.

Accordingly, plaintiff's motion for continuance hereby is GRANTED to the extent noted above. The Court further hereby orders as follows:

<u>Discovery</u>

All discovery shall be completed by **December 10, 2009**. Service of responses to interrogatories and to requests to produce, and the taking of depositions shall be completed by this date. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 33(b)(3) requires answers or objections to be served within **thirty (30) days** after service of the interrogatories. The serving party, therefore, must serve his/her interrogatories at least **thirty (30) days** before the deadline in order to allow the other party time to answer.

<u>Motions</u>

Any dispositive motion shall be filed and served on or before **January 9, 2010**. A party must file with the motion a supporting memorandum. The motion shall include in its caption (immediately below the title of the motion) a designation of the Friday upon which the motion is to be noted upon the Court's calendar. That date shall be the fourth Friday following filing of the dispositive motion.

All briefs and affidavits in opposition to any motion shall be filed and served pursuant to the requirements of Fed. R. Civ. P. 7 and Local Rule CR 7. If a party fails to file and serve timely opposition to a motion, the court may deem any opposition to be without merit. The party making the motion may file a reply to the opposing party's briefs and affidavits, which also shall be filed and served pursuant to the requirements of Fed. R. Civ. P. 7 and Local Rule CR 7.

If a motion for summary judgment is filed, it is important for the opposing party to note the following:

> A motion for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure will, if granted, end your case.
Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, **you must set out specific facts in declarations, deposition, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment , if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.**

Rand v. Rowland, 154 F.3d 952, 962-963 (9th Cir. 1998)(emphasis added). Furthermore, Local Rule CR 7(b)(4) states that a party's failure to file necessary documents in opposition to a motion for summary judgment may be deemed by the court to be an admission that the opposition is without merit.

## Joint Status Report

Counsel and *pro se* parties are directed to confer and provide the court with a joint status report by no later than **February 23, 2010**. The joint status report shall contain the following information by corresponding paragraph numbers:

1. A short and concise statement of the case, including the remaining legal and factual issues to be determined at trial;

2. A narrative written statement from each party setting forth the facts that will be offered by oral or written documentary evidence at trial;

3. A list of all exhibits to be offered into evidence at trial;

4. A list of the names and addresses of all the witnesses each party intends to call along with a short summary of anticipated testimony of each witness.

5. Whether the parties agree to arbitration under this district's arbitration program, and if so whether the arbitration will be final and conclusive or the right to trial de novo will be preserved (see Local Rule CR 39.1(d));

6. Whether the case should be bifurcated by trying the liability issues before the damages issues, or specially managed in any other way;

7. Any other suggestions for shortening or simplifying the trial in this case;

8. The date the case will be ready for trial, considering Local Rule CR 16 deadlines;

9. The dates on which trial counsel are unavailable and any other complications to be considered in setting a trial date;

10. Whether the trial will by jury or non-jury;

11. The number of trial days required, and suggestions for shortening trial;

12. The names, addresses, and telephone numbers of all trial counsel and unrepresented (pro se) parties who intend to appear at trial.

If the parties are unable to agree on any part of the report, they may answer in separate paragraphs. **Separate reports are <u>not</u> to be filed**. Plaintiff's counsel (or plaintiff, if *pro se*) will be responsible for initiating communications for the preparation of the joint status report.

### Proof of Service & Sanctions

All motions, pretrial statements and other filings shall be accompanied by proof that such documents have been served upon counsel for the opposing party (or upon any party acting pro se). The proof shall show the day and manner of service and may be by written acknowledgment of service, by certificate of a member of the bar of this court, by affidavit of the person who served the papers, or by any other proof satisfactory to the court. Such proof of service shall accompany both the original and duplicates filed with the Clerk. Failure to comply with the provisions of this Order can result in dismissal/default judgment or other appropriate sanctions.

The Clerk is directed to send a copy of this Order to plaintiff and counsel for defendants.

DATED this 8th day of October, 2009.

Karen L. Strombom
United States Magistrate Judge